IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE BEAUDRY, | ) | CASE NO. 1:11 CV 1730 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Michelle Beaudry, for disability insurance benefits. The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Beaudry had severe impairments consisting of:

- degenerative disc disease of the cervical spine, status post surgery done in 2001 with subsequent nonunion and painful prominent hardware, status post surgery done September 6, 2006, that included removal of hardware from the anterior spine, left iliac crest bone graft, C-6 hemi-corpectomy, and C6-7 anterior cervical instrumentation;[1]

- left shoulder impingement; and

- chronic obstructive pulmonary disease.

---

[1] Transcript ("Tr.") at 17.

Th ALJ made the following detailed finding regarding Beaudry's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that, from September 1, 2006, the alleged onset date, through the date of this decision, Ms. Beaudry had the residual functional capacity to perform work activities except for the following limits on Ms. Beaudry's ability to work:[2]
>
>> Ms. Beaudry could and can lift and carry up to and no more than 10 pounds occasionally and 5 pounds frequently.
>>
>> Ms. Beaudry could and can stand and/or walk up to and no more than 15 minutes at a time after which Ms. Beaudry must take a break from standing or walking. This does not mean that Ms. Beaudry had to or has to take a break from working. This breaking from standing and/or walking must last for at least 45 minutes before Ms. Beaudry could and can resume standing and/or walking. Ms. Beaudry could and can stand and/or walk up to and no more than a total of 2 hours per 8-hour workday.
>>
>> Ms. Beaudry could and can sit up to and no more than 45 minutes at a time after which Ms. Beaudry must take a break from sitting. This does not mean that Ms. Beaudry had to or has to take a break from working., This break from sitting must last for at least 15 minutes before Ms. Beaudry could and can resume sitting. Ms. Beaudry could and can sit up to and no more than a total of 6 hours per 8-hour workday.
>>
>> Ms. Beaudry could not and cannot reach above shoulder level with either upper extremity.
>>
>> Ms. Beaudry could not and cannot push or pull with either upper extremity.
>>
>> Ms. Beaudry could not and cannot climb ladders, ropes, or scaffolds.
>>
>> Ms. Beaudry could and can climb steps and ramps up to and no more than occasionally but only with a handrail. In the absence of a handrail, Ms. Beaudry could not and cannot climb steps and ramps.

---

[2] *Id.* at 23.

> Ms. Beaudry could and can stoop, crouch, squat, and kneel up to and no more than occasionally.
>
> Ms. Beaudry could not and cannot crawl.
>
> Ms. Beaudry could not and cannot do work that requires the ability to freely move the head up, down, left, or right.
>
> Ms. Beaudry could not and cannot work in proximity to unprotected heights, dangerous moving machinery, or other workplace hazards.
>
> Ms. Beaudry could not and cannot operate a motor vehicle as part of a job.
>
> Ms. Beaudry could not and cannot work in an environment where there would be exposure to fumes, chemicals, dust, or agricultural or landscaping pollens in concentrations that exceed what would be in the environment outside of or away from the workplace
>
> Ms. Beaudry could not and cannot work in an environment where there would be exposure to extremes of cold or humidity.

Given that residual functional capacity, the ALJ found Beaudry capable of her past relevant work as loan clerk and data entry clerk.[3]

Alternatively, based on an answer to a hypothetical question posed to the vocational expert ("VE") at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Beaudry could perform.[4] The ALJ, therefore, found Beaudry not under a disability.[5]

---

[3] *Id.* at 30.

[4] *Id.* at 32.

[5] *Id.* at 34.

Beaudry asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, this case initially presents three issues for decision:

- The ALJ declined to give the opinions of Beaudry's treating physician, N. Dreher, M.D., controlling weight. Did the ALJ properly evaluate Dr. Dreher's opinion? Is the decision not to give that opinion controlling weight supported by substantial evidence?

- The ALJ found Beaudry's allegations of the functionally limiting effects of her impairments credible to the extent consistent with the residual functional capacity finding only. Does substantial evidence support this credibility finding?

- Does the testimony of the vocational expert provide substantial evidence in support of the finding that Beaudry is capable of performing her past relevant work?

As discussed below, as a result of the oral argument herein, the focus of this case is whether substantial evidence supports the ALJ's RFC finding.

The Court concludes that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**1.    Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on

      review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

      The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[6]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[7] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[8]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.**    **Substantial evidence and the RFC finding**

This case involves an extensive opinion by the ALJ with substantial articulation and very detailed findings; counsel for both the plaintiff and the Commissioner have presented to me capable and helpful written and oral arguments.

---

[6] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[7] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[8] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Although there are three issues stated, the only issue for decision is whether there exists substantial evidence to support the finding. Issue one relates to the evaluation of the opinion of a treating source, and issue two goes to credibility. These bear on whether there is substantial evidence supporting the RFC. Issue three challenges the step four finding that Beaudry could perform her past relevant work. Because the ALJ not only made a step four finding but also did an alternative step five finding, the step four issue is not dispositive. At the oral argument in this case, counsel for Beaudry stated that, assuming arguendo that the RFC pending has the support of substantial evidence, the step four and the step five findings have to be affirmed.[9] This case turns, therefore, on the RFC finding.

The RFC finding[10] is very detailed. Extensive limitations are built into the finding. This is a sedentary RFC with numerous additional exertional, postural, and non-exertional limitations. There is much that Beaudry cannot do that the ALJ acknowledges. There are additional limitations, however, that Beaudry submits should have been included: first, the need for a cane for purposes of walking and changing positions, and second, limitations with respect to extension of the arms on the horizontal plane for purposes of reaching and handling. These related to a cervical fusion that Beaudry underwent, which has limited her range of motion, and she has pain moving her neck.

---

[9] Counsel for Beaudry made clear, however, that she did not agree that substantial evidence supported the RFC finding.

[10] Tr. at 23.

As for a limitation for use of a cane, the only reference I find in the record about a cane is Beaudry's hearing testimony that she uses a cane outside her apartment.[11] No physician or therapist recommended or prescribed the use of a cane. In particular, neither of the RFC opinions on which she relies – the Petruzzi/Dreher evaluation of October 3, 2008,[12] or the Petruzzi evaluation of June 18, 2009[13] – reference a cane. The ALJ, therefore, committed no error by not including use of a cane as a limitation in the RFC finding.

Beaudry's primary argument goes to the weight given to the RFC of N. Dreher, M.D., a physician who treated Beaudry through Kaiser Permanente, in an evaluation co-signed by Anthony Petruzzi, a physician's assistant; Dr. Dreher opined that Beaudry was extremely limited in her ability to bend, reach, handle, and do repetitive foot movements.[14] That portion of the Petruzzi/Dreher opinion was given no weight by the ALJ because the evidence persuaded him that her ability to do these things was limited, but there was not enough evidence in the treatment notes or anywhere else in the record to persuade him that her ability to do these things was extremely limited.[15] So the issue is whether or not there is sufficient evidence in the record to meet the substantial evidence standard with respect to the extreme versus just limited ability to use her hands and upper arms on a horizontal plane.

---

[11] *Id.* at 45-46.

[12] *Id.* at 331-33.

[13] *Id.* at 438-40.

[14] *Id.* at 332.

[15] *Id.* at 27.

I have reviewed the medical records cited, and in particular those from Kaiser Permanente where Beaudry saw Dr. Dreher and Mr. Petruzzi, among other physicians and medical professionals.[16] Based on that review, I have found insufficient evidence to dispute the ALJ's finding that Beaudry's limitations are not as great as opined by Mr. Petruzzi and Dr. Dreher. In particular, I note that in the later evaluation done by Mr. Petruzzi,[17] which Dr. Dreher did not cosign, he stated that Beaudry could use her hands for repetitive actions such as grasping and fine manipulation.[18]

The bottom line consideration is whether the reviewing court can understand the basis on which the ALJ made his finding as to the weight of the medical sources given.[19] Here, the ALJ provided extensive articulation and a reasonable mind could conclude that the ALJ weighed the Petruzzi/Dreher evaluation correctly.

---

[16] *Id.* at 277-38, 334-437, 444-46. From these records, it appears that Kaiser adopted a team approach to physician care, and Dr. Dreher did not consistently see Beaudry during her medical appointments. At times it appears that only Mr. Petruzzi actually saw Beaudry, and Dr. Dreher merely signed off on the chart. *E.g.*, Tr. at 337, 363, 379. In fact, it appears that Dr. Dreher actually saw Beaudry only once, on March 12, 2008. Tr. at 384-89. This seriously calls into question whether Dr. Dreher should be considered as a treating physician for purposes of the regulation. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). An ALJ need not give good reasons for the weight assigned to a physician who examined but did not treat a claimant. *Perry v. Comm'r of Soc. Sec.*, No. 12-5179, slip op. at 3 (6th Cir. Sept. 27, 2012).

[17] Tr. at 438-40.

[18] *Id.* at 438.

[19] *Johnson-Hunt v. Comm'r of Soc. Sec.*, No. 11-6160, 2012 WL 4039752, at *7 (6th Cir. Sept. 14, 2012).

Finally, regarding credibility, I incorporate by reference my extensive analysis of the law governing review of an ALJ's credibility determinations in *Cross v. Commissioner of Social Security*.[20] The ALJ's articulation supporting his finding that Beaudry's allegations were credible, consistent with the RFC finding,[21] is detailed and thorough. I find no compelling reason to disturb the ALJ's credibility determination.[22]

As the Sixth Circuit observed in *Buxton v. Halter*, there exists a "zone of choice" within which the Commissioner can act without interference from the reviewing court.[23] The concept of a "zone" implies that evidence having varying cumulative weight may suffice to provide substantial evidence supporting the Commissioner's decision. On one end of the zone, the objective medical evidence may be such as to convince the reviewing court that, even under a *de novo* standard, the Commissioner decided the case correctly. But, on the other end of the zone, the evidence may be less compelling. Such evidence may cause a reviewing court to question whether it would have decided the case in the same way under a *de novo* standard. Nevertheless, if the court concludes that a reasonable mind might accept that evidence as adequate to support the Commissioner's conclusion, it must affirm the Commissioner.

---

[20] *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724 (N.D. Ohio 2005).

[21] Tr. at 24-30.

[22] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[23] *Buxton*, 246 F.3d at 772.

Here, the record contains abundant evidence that Beaudry had significant limitations, which the ALJ substantially acknowledged. The record also contains, however, substantial evidence supporting the finding that Beaudry retained the residual functional capacity found by the ALJ. The Commissioner's decision, therefore, falls within the zone of choice in which this Court must affirm.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Beaudry had no disability. Accordingly, the decision of the Commissioner denying Beaudry disability insurance benefits is affirmed.

IT IS SO ORDERED.


Dated: September 28, 2012                       s/ William H. Baughman, Jr.
                                                United States Magistrate Judge